UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CLYDE ASSOCIATES, LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**McKESSON CORPORATION and UNIVAR SOLUTIONS USA, INC.,**<br><br>**Defendants.** | Civ. No. 2:19-cv-21933 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

Plaintiff Clyde Associates, LLC, ("Clyde") brings this action against Defendants McKesson Corporation ("McKesson") and Univar Solutions USA, Inc., ("Univar") (together, "Defendants") for breach of contract, tortious conduct, and violations of state environmental laws related to Defendants' longtime lease of Clyde's property. This matter is before the Court on Defendants' motion to dismiss the First Amended Complaint ("FAC") for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to dismiss certain claims under Rule 12(b)(6). For the reasons stated below, Defendants' motion is **GRANTED in part** and **DENIED in part**.

**I.   BACKGROUND**[1]

On December 31, 1969, Clyde (as Landlord) and McKesson (as Tenant) entered into a Lease Agreement for Clyde's property at 160 Essex Avenue East, Avenel, New Jersey (the "Property").[2] The initial term of the Lease ran from January 1, 1970 until December 31, 1994, after which McKesson elected to extend the lease in five-year terms for the next twenty-five years. McKesson elected not to extend the most recent term, such that the Lease with Clyde ended on December 31, 2019.

---

[1] Unless the citation indicates otherwise, the Court derives all facts from the FAC. ECF No. 9. The Court will also refer to the Lease attached to and incorporated in the FAC. *See* Fed. R. Civ. P. 10(c).
[2] The original parties to the Lease Agreement in 1969 were Fourth Banbury Properties, Inc. (as Landlord) and Foremost-McKesson, Inc. (as Tenant). Clyde and McKesson are the successors-in-interest to these companies, respectively. The Court will simply refer to the parties as "Clyde" and "McKesson," regardless of the time period.

The Lease required McKesson to, among other things, comply with and cause the Property to comply with all federal and state laws and regulations; to indemnify Clyde against any and all liabilities, losses, damages, costs, and expenses; to maintain and repair the Property; and to surrender the Property at the end of the Lease in the same condition in which it was originally received. Ex. A ¶¶ 8(b), 10, 11, 25, ECF No. 9-1.

Unbeknownst to Clyde, McKesson sublet the Property to Univar from November 1, 1986 to December 31, 2019.[3] As the subtenant, Univar's rights to occupy the Property were subject to both the Sublease and the Lease.

During their tenancies, McKesson and Univar used and stored hazardous substances on the Property. The substances were discharged into the environment and contaminated the Property, surrounding properties, and the groundwater beneath. In November of 1986, McKesson and Univar entered into an Administrative Consent Order ("ACO") with the New Jersey Department of Environmental Protection ("NJDEP"). McKesson and Univar are jointly and severally liable under the ACO for completing a full investigation and remediation of all discharged hazardous waste on or emanating from the Property. Neither McKesson nor Univar disclosed to Clyde any information about the Property's contamination or their investigation and remediation efforts before 2019. To date, they have undertaken sporadic remedial measures, but have not completed a full investigation and remediation of the Property as required under the ACO. Clyde estimates it will cost $928,500 to complete the remaining work.

In addition to the environmental damage, McKesson failed to maintain and repair the Property's infrastructure, like the loading docks and surrounding pavement, and allowed the Property to deteriorate into poor condition. Clyde estimates the cost of maintenance and repairs will exceed $200,000.

On November 25, 2019, Clyde commenced this action in the Superior Court of New Jersey, Middlesex County. *See* Notice of Removal ¶ 2, ECF No. 1. McKesson timely removed the case to this Court based on diversity of citizenship. *Id.* ¶ 1. Plaintiff later filed the FAC, adding Univar as a Defendant and alleging eight claims.

Count I alleges McKesson breached its obligations under the Lease by discharging hazardous substances into the environment and failing to maintain the Property. Count II alleges McKesson breached the implied covenant of good faith and fair dealing by concealing the environmental contamination in bad faith. Count III alleges McKesson and Univar are liable for the environmental damage under common law negligence. Count IV alleges McKesson and Univar are liable for the environmental damage under a theory of strict liability for engaging in ultra-hazardous or abnormally dangerous activity. Count V alleges McKesson and Univar's discharge of hazardous substances amounts to trespass. Counts VI, VII, and VIII allege various claims against McKesson and Univar under New Jersey's Spill Compensation

---

[3] Univar is the successor-in-interest to the original subtenant, DSW, Inc.

2

and Control Act, N.J.S.A. 58:10-23.11, *et seq.*, Industrial Site Recovery Act, N.J.S.A. 13:1K-6, *et seq.*, and Environmental Rights Act, N.J.S.A. 2A:35A-1, *et seq.*

Defendants now move to dismiss the FAC for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to dismiss Counts II, III, IV, V and claims for punitive damages under Rule 12(b)(6). As the matter is fully briefed, ECF Nos. 26-27, the Court decides the motion on the papers without oral argument. Fed. R. Civ. P. 78(b).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint when the court lacks jurisdiction over the subject matter of the action. A challenge to subject matter jurisdiction may be either a facial or a factual attack. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true," whereas "the latter, a factual challenge, attacks the factual allegations underlying the complaint's assertion of jurisdiction." *Id.* (internal citations and quotations omitted). "[A] factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'" *Id.* (internal citation omitted).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court takes all allegations in the complaint as true and views them in the light most favorable to the plaintiff. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

While a complaint need not contain detailed factual allegations, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Twombly*, 550 U.S. at 555, 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Defendants argue the Court lacks subject matter jurisdiction because Clyde is not registered to do business in New Jersey and is therefore barred from maintaining this action. Def. Br. at 7, ECF No. 19-1. Under New Jersey law, a foreign limited liability company

transacting business in New Jersey may not maintain a suit in either state or federal court in New Jersey "unless it has a certificate of authority to transact business in this State." N.J.S.A. 42:2C-65(a). Because Defendants attack the veracity of the FAC's assertion that Clyde is authorized to do business in New Jersey, the Court construes Defendants' argument as a factual challenge to jurisdiction and may consider evidence extraneous to the pleadings. *See Davis*, 824 at 346.

Clyde concedes that it did not have a certificate of authority when it initiated this action. Pl. Opp'n Br. at 11, ECF No. 26. Clyde registered for a certificate of authority on May 29, 2020, three days after Defendants filed the present motion. Exs. 1, 2, Pl. Opp'n Br., ECF Nos. 26-2, 26-3. Clyde is now an active business in good standing in New Jersey, but the parties dispute whether Clyde's corrective registration cures the jurisdictional deficiency.

The Court previously faced this same issue in *Am. Estates, Inc. v. Marietta Cellars Inc.*, No. 10-6763 (WJM), 2011 WL 1560823, at *2 (D.N.J. Apr. 25, 2011), but did not reach the merits of the parties' arguments. There, the plaintiff, a foreign corporation, obtained a certificate of authority only after the defendant filed a motion to dismiss. *Id.* at *2. In its reply papers, the defendant conceded its jurisdictional argument based on the certificate was moot. *Id.* The Court did not hold that the argument was moot, but rather that the defendant had waived the argument. *Id.*

A survey of the sparse caselaw on this issue reveals some New Jersey courts have allowed a plaintiff to cure a certificate of authority deficiency and others have not. *Compare Berlin, Sachs & Werkstell v. Cart-Wright Indus., Inc.*, No. 89-1781, 1990 WL 126197, at *4 n.2 (D.N.J. Aug. 27, 1990) (noting "that the practice of many New Jersey courts has been to allow the plaintiff an opportunity to comply with the New Jersey law during the pendency of the litigation"), *Materials Research Corp. v. Metron, Inc.*, 64 N.J. 74, 77 n.1 (1973) (noting that "[c]ompliance with [this] requirement during the course of trial has been held sufficient for a plaintiff unqualified at the action's inception to avoid being precluded from maintaining suit"), and *Basement Store Franchise Corp. v. Natoli,* No. A-6092-12T4, 2014 WL 4328218, at *4 (N.J. Super. Ct. App. Div. Sept. 3, 2014) (reversing dismissal of the complaint and denial to reinstate the complaint where plaintiff complied with the requirement during the pendency of the litigation), *with Seven Caesars, Inc. v. House*, No. A-4747-12T2, 2014 WL 4450441 (N.J. Super. Ct. App. Div. Sept. 11, 2014) (finding that a foreign corporation which loses its certificate of authority due to a lapse in its corporate status cannot cure the lapse by later obtaining a renewed certificate, and thus "may not file suit to enforce claims arising from the business transacted during the period of its lapse"); *SMS Financial P, LLC v. M.P. Gallagher, LLC*, No. BER-L-5804-17, 2019 WL 5459849 (N.J. Super. Ct. Law Div. Jan. 25, 2019) (granting the defendant's motion to dismiss for lack of subject matter jurisdiction where the plaintiff only obtained a certificate of authority during the litigation).

Without a clear indication that the New Jersey statute bars Plaintiff from maintaining this suit even after it has acquired a certificate of authority, the Court will follow the practice

4

of those courts that have permitted plaintiffs to cure the deficiency during the pendency of the litigation. Clyde may proceed with the current lawsuit.

### B. Negligence, Strict Liability, and Trespass

Defendants argue that Clyde's claims for negligence, strict liability, and trespass (Counts III, IV, and V, respectively) are tort remedies barred by the economic loss doctrine and should be dismissed. Def. Br. at 9-14, ECF No. 19-1. The Court disagrees.

Under New Jersey law, the economic loss doctrine provides that "a party typically may not recover in tort for damages caused by a breach of contract." *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867 (FLW), 2012 WL 3647427, at *4 (D.N.J. Aug. 23, 2012). "A tort claim may only be asserted alongside a breach of contract claim if the tortious conduct is 'extrinsic' to the contract between the parties." *Meng v. Du*, No. 19-18118 (FLW), 2020 WL 4593273, at *5 (D.N.J. Aug. 11, 2020) (quoting *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009)).

Here, Clyde's tort claims seek redress for decades of environmental contamination to its Property, surrounding properties, and the groundwater below. The claims sound in state environmental law, not contract law, and exist independent of and irrespective of the parties' obligations under the Lease. Counts III, IV, and V for negligence, strict liability, and trespass may therefore proceed.

### C. Covenant of Good Faith and Fair Dealing

Defendants also argue that Clyde fails to plead a sufficient claim against McKesson for breach of the implied covenant of good faith and fair dealing (Count II).

Contained in every New Jersey contract is the implied covenant of good faith and fair dealing requiring "that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000) (internal citation and quotations omitted). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *Id.*

Here, the FAC alleges McKesson acted in bad faith by concealing from Clyde the environmental contamination and the investigation and remediation efforts for years until 2019. FAC ¶¶ 76-85, ECF No. 9. Clyde argues McKesson's persistent concealment deprived it of the opportunity to learn of the default, terminate the Lease, and mitigate the damages. Pl. Opp'n Br. at 22-23, ECF No. 26. The Court finds the allegations sufficient to plead a claim for breach of the implied covenant of good faith and fair dealing. Count II may proceed.

### D. Punitive Damages

Defendants ask the Court to dismiss Clyde's claims for punitive damages in Counts I through VI, arguing that the claims fail as a matter of law and that Clyde has failed to plead Defendants engaged in conduct egregious enough to support such damages. Def. Br. at 16-19, ECF No. 19-1.

The Court will dismiss Clyde's claims for punitive damages under Counts I (breach of contract) and II (breach of the implied covenant of good faith and fair dealing) because New Jersey law "generally does not permit a plaintiff to recover punitive damages for breach of contract claims." *Nebraskaland, Inc. v. River St. Idealease, LLC*, 188 F. Supp. 3d 390, 400 (D.N.J. 2016). The Court will also dismiss Clyde's claims for punitive damages under Count VI for contribution under New Jersey's Spill Compensation and Control Act, which does not authorize a claim for punitive damages. *See* N.J.S.A. 58:10-23.11f(a)(3); *see also Estate of Bloom v. Bank One Corp.*, No. 03-6108, 2006 WL 8457135, at *3 (D.N.J. Feb. 17, 2006) (noting that the statute expressly provides for treble damages, and not punitive damages, as a form of relief). Clyde's claims for punitive damages under Counts III, IV, and V for negligence, strict liability, and trespass may proceed, as it is premature to deny them at this early stage of the case.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the First Amended Complaint is **GRANTED** as to Clyde's claims for punitive damages under Counts I, II, and VI. Defendants' motion is otherwise **DENIED**.

An appropriate Order shall follow.

                                                      s/ William J. Martini
                                        **WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 31, 2020**